IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-00842-FL

**Senaida Garcia,**

                Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

                Defendant.

**Memorandum & Recommendation**

      Plaintiff Senaida Garcia instituted this action on November 11, 2014, to challenge the denial of her application for social security income. Garcia claims that Administrative Law Judge Edward W. Seery erred in his determination by failing to include her limitations in concentration, persistence, and pace in either the residual functional capacity ("RFC") assessment or in the hypothetical questions to the Vocational Expert ("VE"). Garcia further argues that new and material evidence presented to the Appeals Council warrants remand for further consideration. Both Garcia and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 17, 21.

      After reviewing the parties' arguments, the court has determined that ALJ Seery erred in his decision. ALJ Seery failed to account for Garcia's moderate limitations in concentration, persistence, and pace. Therefore the undersigned magistrate judge recommends[1] that Garcia's Motion for Judgment on the Pleadings be granted, that Colvin's Motion for Judgment on the

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

Pleadings be denied, and that the court remand the matter to the Commissioner for further proceedings.

**I.     Background**

On October 28, 2011, Garcia filed an application for disability benefits on the basis of a disability that allegedly began on April 1, 2009. After her claim was denied at both the initial stage and upon reconsideration, Garcia appeared before ALJ Seery for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Seery determined that Garcia was not entitled to benefits because she was not disabled. Tr. at 82–94.

ALJ Seery found that Garcia had the following severe impairments: fibromyalgia, degenerative disc disease of the cervical spine, anxiety, and depression. *Id.* at 84. ALJ Seery also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Seery determined that Garcia had the Residual Functional Capacity ("RFC") to perform medium work, except that she is limited to performing simple and repetitive tasks with only occasional interaction with others. *Id.* at 86. ALJ Seery also concluded that Garcia was unable to perform any past relevant work but that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing. *Id.* at 89–90. These jobs included: cleaner, laundry laborer, and store laborer. *Id.* at 90. Thus, ALJ Seery found that Garcia was not disabled. *Id*.

After unsuccessfully seeking review by the Appeals Council, Garcia commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on November 18, 2014. D.E. 1-2.

**II.     Analysis**

   **A.     Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

   **B.     Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing

whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Evidence

Garcia's medical background includes a history of anxiety and depression. Tr. at 87. At a December 2008, appointment with her primary care physician, Garcia was noted to be tearful and fatigued with impaired concentration and insomnia, for which Dr. Fischer prescribed medications. *Id.* at 253–54. Garcia's symptoms continued following the deaths of family members in 2009. She reported to a local Emergency Department in March 2009 for headaches, which providers determined were related to recent major psychosocial stress. *Id.* at 393. By 2010, Garcia's depression continued and she was having difficulty getting out of bed, insomnia, decreased energy, and crying spells. *Id.* at 237–38. She also reported chronic neck pain. *Id.* At a follow-up visit, Dr. Fischer noted that she had depression, decreased energy, and neck and back pain. *Id.* at 234.

After changing her primary care provider in 2010, treatment records consistently noted fatigue, impaired memory, depression, anxiety, and fibromyalgia symptoms. *Id.* at 344–75. In April 2011, providers observed that Garcia had decreased range of motion in her left shoulder and also had issues with concentration. *Id.* at 346, 356. A February 17, 2012, rheumatology consultation noted 18 positive tender points for fibromyalgia. *Id.* at 339–41. Treatment with medications and physical therapy had limited success. *Id.* at 492–501, 508–14.

Garcia was involved in a car accident in April 2012, which caused her back and neck pain to worsen. *Id.* at 520. She also developed numbness and tingling in her legs and left arm. *Id.* A total spine MRI showed C5–C6 focal parasagittal disc herniation, central disc herniation at

4

T2–T3, and lateral left disc herniation at L4–L5 and L5–S1. *Id.* at 520–21, 598–99. Upon examination, Garcia had positive Romberg test, positive Spurling test on the left, and a positive straight leg raise on the left. *Id.* at 518. Garcia had a laproscopic cholecystectomy on July 15, 2012. *Id.* at 570–72.

At the suggestion of her physicians, Garcia began mental health treatment at Carolina Outreach on 2013. *Id.* at 442–59. Her Global Assessment of Functioning ("GAF") score was assessed at 50 and was corroborated both by subjective complaints and treatment records. *Id.* Carolina Outreach treatment notes observed Garcia suffered from impaired sleep, thoughts of death, crying spells, fatigue, and impaired concentration. *Id.* Despite mental health treatment, Garcia continued to experience sleep disruptions, crying spells, irritability, and pain. *Id.* at 488–91. The record also notes that Garcia's chronic pain is directly related to her anxiety and depression. *Id.* at 234–35, 368, 493, 496, 498.

### D. Limitations in concentration, persistence, and pace

Garcia first argues that ALJ Seery erred by failing to account for her moderate limitations in concentration, persistence, and pace in either the RFC or in the hypothetical questions posed to the VE. The Commissioner maintains that the RFC limitation to simple and repetitive tasks with only occasional contact with others accounts for her moderate limitations in this functional area. The court agrees with Garcia that both the RFC and the hypothetical questions to the VE failed to reflect her moderate difficulties in concentration, persistence, and pace.

In *Mascio v. Colvin*, the Fourth Circuit joined the Third, Seventh, and Eighth Circuits by holding that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d 632, 638 (4th Cir. 2015) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180

(11th Cir. 2011)). The Fourth Circuit noted that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Because the ALJ found at step three that the claimant had limitations in this functional area but did not account for such limitations in the hypothetical questions at step five, *Mascio* found that remand was appropriate. *Id.*

The Commissioner asserts that *Mascio* is distinguishable from the present case because *Mascio* held that simple, routine tasks or unskilled work did not account for limitations in concentration, persistence or pace. Here, however, ALJ Seery did not simply limit her to simple, repetitive tasks. Instead, the Commissioner maintains, ALJ Seery accounted for Garcia's limitations in concentration, persistence, and pace by including in the hypothetical question the additional limitation of only occasional interaction with others. Although *Mascio* does not address whether such limitations account for moderate difficulties in this functional area, other courts have held that a limitation in production standards accounts for moderate difficulties in maintaining concentration, persistence, and pace. *See Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (hypothetical question which referenced an individual who "would not have a quota to fulfill" accounted for moderate difficulties in concentration, persistence, and pace); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (ALJ captured her moderate limitation in concentration, persistence, and pace when he included a restriction of "no high production goals.").

In the federal district courts in North Carolina addressing this issue from *Mascio*, most have found that remand was warranted because the limitation in concentration, persistence, and pace was not accounted for in the RFC and/or hypothetical question to the VE. *See Franklin v. Colvin*, No. 5:14-cv-84-MOC-DLH, 2015 WL 4510238, at *2 (W.D.N.C. July 24, 2015)

6

(remanding for further proceedings where ALJ found claimant had moderate difficulties in concentration, persistence, and pace but failed to connect such limitations to the RFC that found he could perform "simple, one-two step tasks in a low stress environment, defined as one that does not involve production/assembly-line/high-speed work or contact with the public"); *Hagerdorn v. Colvin*, No. 2:12-cv-29-RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (limitations to simple, routine, and repetitive tasks in a low-production, low stress work setting, defined as occasional change in job setting or decision making, did account for some of claimant's mental limitations, such as the ability to understand, carry out, and remember instructions, respond appropriately work situations, and deal with changes in a routine work setting, but not for his moderate limitations in concentration); *Scruggs v. Colvin*, No. 3:14–cv–00466–MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (an ability to perform simple, routine, repetitive tasks in a nonproduction environment, without more, does not account for claimant's moderate difficulties in concentration, persistence and pace); *Volrath v. Colvin*, No. 1:14-cv-00191-MR, 2015 WL 5227818, at *1 (W.D.N.C. Sep 08, 2015) (limitation to simple, unskilled work did not account for difficulties in concentration, persistence, and pace); *Taylor v. Colvin*, No. 1:14-cv-629, 2015 WL 4726906, at *6 (M.D.N.C. Aug 10, 2015) (simple one or two step tasks/instructions did not account for moderate difficulties in concentration, persistence, and pace); *Latham-Gragg v. Colvin*, No. 5:14-cv-00049-MOC, 2015 WL 4612019, at *3 (W.D.N.C. Jul 31, 2015) (remanding where ALJ failed to connect moderate limitations in concentration, persistence, and pace to RFC limiting plaintiff to a setting with routine tasks and simple, short instructions, simple work-related decisions, and few workplace changes); *Faulkner v. Colvin*, No. 1:14-cv-00231-FDW, 2015 WL 4603569, at *3 (W.D.N.C. Jul 30, 2015) (limitation to simple tasks and instructions did not account for moderate limitations in concentration,

7

persistence, and pace). *But see Linares v. Colvin*, No. 5:14-cv-120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (distinguishing *Mascio* where ALJ limited claimant to simple, routine, repetitive tasks but also limited her to a stable work environment at nonproduction pace with only occasional public contact. The nonproduction pace addressed her limitations in pace and the stable work environment with only occasional public contact addressed her limitation in concentration and persistence).

In the present case, as noted above, the ALJ Seery asked the VE to assume a hypothetical individual who was "confined to work in the realm of simple, repetitive tasks and a job that had limited social requirements, let's assume no more than occasional interaction with others." Tr. at 49. The limitation to simple repetitive work is insufficient, under *Mascio*, to account for moderate limitations in concentration, persistence, and pace. Although the Commissioner attempts to distinguish *Mascio* by noting that ALJ Seery also limited Garcia to no more than occasional interactions with others, this additional limitation more appropriately addresses her moderate difficulties in the area of social functioning. Tr. at 85. The majority of courts in North Carolina, including this court, have held that such restrictions do not adequately address a claimant's moderate limitations in concentration, persistence and pace. *See Hagerdorn*, 2015 WL 4410288, at *4; *Scruggs*, 2015 WL 2250890, at *5; *Volrath*, 2015 WL 5227818, at *1; *Lantham-Gragg*, 2015 WL 4612019, at *3. Given the case law, remand for further consideration of Garcia's moderate limitations in concentration, persistence, and pace as they impact other work is appropriate.

Further, in discussing whether the "paragraph B" criteria[2] was established at step three, ALJ Seery found that Garcia had moderate limitations in concentration, persistence, and pace.[3]

---

[2] At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404,

Tr. at 85. ALJ Seery noted that she had poor concentration, difficulty remembering, required written instructions a few times, and could pay attention for one hour. *Id.* Although the ALJ's findings at step three may not require any additional limitations for concentration, persistence, or pace in the RFC, the ALJ must at least provide a sufficient explanation in the decision to allow the court to conduct meaningful review of the RFC determination. *See Scruggs v. Colvin*, 2015 WL 2250890, at *5; *Reinhardt v. Colvin*, No. 3:14–cv–00488–MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015). ALJ Seery noted that her impairments, including anxiety and depression, limit Garcia's abilities, as evidenced by the medical record. Tr. at 88. ALJ Seery then noted that her mental impairments limit her to simple and repetitive tasks with only occasional interaction with others. *Id.* This does not explain how ALJ Seery accounted for the moderate limitations in concentration, persistence, and pace when formulating Garcia's RFC. ALJ Seery should specifically state with sufficient discussion how the RFC determination reflected Garcia's limitations in concentration, persistence, and pace,[4] or whether ALJ Seery found that the moderate limitations in concentration, persistence, and pace had no impact on Garcia's ability to work, in order to allow the court to conduct meaningful review. Accordingly, remand for further

---

Subpart P, Appendix 1. Listings 12.00 *et. seq.*, pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Each listing therein consists of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. Id. § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. Id. Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.

[3] The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." § 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(3).

[4] Given the case law cited above, it would be seem that the RFC limitation, as stated, could not account for moderate limitations in concentration, persistence, and pace.

consideration of Garcia's limitations in maintaining concentration, persistence, and pace is warranted.

### E. New and material evidence

Garcia also contends that the Appeals Council erred in discounting treatment records from Dr. Charles Lapp. The Commissioner maintains that the additional evidence failed to warrant further consideration or reversal of ALJ Seery's decision. The Appeals Council acknowledged this additional evidence and entered it as an exhibit but declined review of ALJ Seery's decision. Tr. at 1–4.

The Appeals Council must consider evidence submitted by a claimant with the request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991); 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."). Evidence is new if it is not duplicative or cumulative. It is material if there is a "reasonable possibility that the new evidence would have changed the outcome of the case." *Wilkins*, 953 F.2d at 96. "[T]he Appeals Council must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Id.* at 95. The Appeals Council does not, however, need to explain its reason for denying review of an ALJ's decision. *Meyer v. Astrue*, 662 F.3d 700, 702 (4th Cir. 2011); *Williams v. Colvin*, No. 5:12-CV-529, 2013 WL 4806965, at *3 (E.D.N.C. Sept. 9, 2013) (noting that the Appeals

Council does not need to explain its reason for denying review of an ALJ decision) (citing *Meyer*, 662 F.3d at 702).

Dr. Lapp's medical records dated September 17, 2013, relate Garcia's history of chronic fatigue dating back to 2008, depression, and lower back pain. Tr. at 18. Dr. Lapp reported that Garcia was currently experiencing fatigue, malaise, insomnia, back pain, joint pain, memory loss, anxiety, and social phobia. *Id.* Dr. Lapp diagnosed Garcia with fibromyalgia, chronic fatigue syndrome, sleep disorder, degenerative disc disease, and migraines. *Id.* at 20. He further opined that Garcia was markedly impaired by weakness and exhaustion after minimal exertion, that her muscle and joint pain affect her sitting, concentration, and sleep, that she had problems with balance, and that she has neurocognitive dysfunction including problems with memory, attention, and concentration. *Id.* Dr. Lapp further observed that Garcia's chronic fatigue syndrome and her fibromyalgia are unpredictable in nature and may involve a prolonged relapse of symptoms. *Id.* at 21. He opined that her condition would last 12 months or longer. *Id.*

At a follow-up visit on January 16, 2014, Dr. Lapp noted that Garcia experiences pain of 9 out of 10 on a general basis. *Id.* at 23. He noted that, because of her pain and fatigue, she can walk for up to 15 minutes, can sit for 12–15 minutes, and can do housekeeping in 10–15 minute intervals. *Id.*

The Appeals Council stated that it had considered the September 2013 records from Dr. Lapp. *Id.* at 2. It determined that ALJ Seery had decided her case through August 14, 2013. *Id.* It further stated that these additional records, dated September 17, 2013, concerned a later time and therefore did not affect the decision of whether she was disabled before August 14, 2013. *Id.*

Garcia contends that medical conditions referenced in the Dr. Lapp's records relate to the time period prior to ALJ Seery's determination. D.E. 18 at 13. She relies on the holding in *Bird*

*v. Commissioner of Social Security Administration*, 699 F.3d 337 (4th Cir. 2012), to advance her argument. In *Bird*, the Fourth Circuit held that "an ALJ must give retrospective consideration to medical evidence created after a claimant's last insured date when such evidence may be 'reflective of a possible earlier and progressive degeneration.'" *Id.* at 345 (quoting *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)). While *Bird* does not directly interpret the rule at issue here, other courts have utilized *Bird* to determine whether the Appeals Council should have evaluated medical evidence created after the date of the ALJ's decision. *See Booker v. Colvin*, No. 1:13-cv-2033-TMC, 2014 WL 6816878 (D.S.C. 2014) (analyzing *Bird* when it assessed whether evidence created after the ALJ's decision linked back to a prior condition).

Although they post-date ALJ Seery's decision, Dr. Lapp's treatment records relate to Garcia's conditions that existed at the time of the decision. Dr. Lapp's initial report noted Garcia's multiple impairments which included pain, fatigue and depression. Tr. at 18. He noted that at least some of these conditions dated back to 2008. *Id.* A follow-up visit only five months after ALJ Seery's decision noted that Garcia's pain during the past year had been the worst it has ever been. *Id.* at 23. Treatment records also relate that back in February 2011, her pain was so bad she could not get out of her car. *Id.* Dr. Lapp opined that Garcia's symptoms could be expected to last 12 months or longer and that she could experience a prolonged relapse of her fibromyalgia and chronic fatigue symptoms. *Id.* at 21. It seems clear, therefore, that Dr. Lapp's treatment records relate to Garcia's conditions at issue before ALJ Seery and can reasonably be viewed to reflect the possible progressive nature of her impairments. This evidence reasonably relates back to Garcia's condition for the time period at issue in ALJ Seery's decision.

Nonetheless, the additional evidence must also qualify as new and material to warrant review. The parties do not dispute that Dr. Lapp's treatment records are new inasmuch as they

were not in evidence before ALJ Seery issued his decision. Additionally, although the records reference many of Garcia's symptoms and conditions that were contained in other evidence considered by ALJ Seery, Dr. Lapp's notes contain functional limitations such as sitting, standing, and walking. The Commissioner has not identified similar limitations in the record before the ALJ Seery. Consequently, Dr. Lapp's records cannot be characterized as duplicative or cumulative of other evidence that ALJ Seery considered. Additionally, as Garcia argues, the additional evidence could reasonably be deemed material inasmuch as Dr. Lapp noted functional limitations, the severity of her fibromyalgia and the progressive and unpredictable nature of this condition. As noted above, Dr. Lapp also found Garcia markedly impaired by weakness and exhaustion after minimal exertion, found her muscle and joint pain affect her sitting, concentration, and sleep, found she had problems with balance, and determined that she has neurocognitive dysfunction including problems with memory, attention, and concentration. Given this evidence, there is a reasonable possibility that the outcome of the disability determination may have been different had such evidence been available to ALJ Seery. Accordingly, the additional evidence should be considered on remand. *See Booker*, 2014 WL 6816878.

### III.   Conclusion

For the forgoing reasons, the court recommends that Garcia's Motion for Judgment on the Pleadings (D.E. 17) be granted, that Colvin's Motion for Judgment on the Pleadings (D.E. 21) be denied, and that the Commissioner's final decision be remanded for further consideration.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file

written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Garcia v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: January 4, 2016.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE